126 N.J. Super. 70 (1972)
312 A.2d 864
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES JOSEPH JENNINGS, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1972.
Decided March 30, 1972.
*71 Before Judges CONFORD, MATTHEWS and FRITZ.
Mrs. Miriam N. Span, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Elson P. Kendall, Assistant Prosecutor, argued the cause for respondent (Mr. Karl Asch, Union County Prosecutor, attorney).
The opinion of the Court was delivered by CONFORD, P.J.A.D.
Defendant was indicted for the murder of one Farrell and was convicted by a jury of manslaughter. *72 Of several points of appeal argued we find one to have merit  that the court over objection excused a defense witness from testifying on a purported claim of privilege of self-incrimination advanced by counsel for the witness without requiring the witness himself to take the stand and refuse under oath (or affirmation) to claim the privilege for stated reasons.
Defendant accosted Farrell on the street while Farrell, with a knife in his hand, was apparently menacing another person sitting in a parked car. The shooting followed momentarily thereafter. Defendant had arrived at the scene in a car with one Figone (the witness mentioned above), had addressed Farrell with a demand for money the latter assertedly owed him, and then, according to defendant's testimony, when Farrell raised the knife toward him, defendant's gun went off, resulting in the fatal wounding of Farrell. The State, however, adduced testimony from which the jury could have concluded that the shooting was not a justified act of self-defense.
Figone had been called as a witness before the grand jury and, after being informed by the prosecutor that he had a privilege of not incriminating himself, testified he knew nothing about the shooting until defendant told him about it later that day. He had loaned defendant his car but was not with him at the time.
Defendant contends that a week or so before the trial, when the prosecutor learned from the defense that Figone was to testify for defendant, he had him indicted for the murder, obstructing justice, aiding defendant to escape apprehension and perjury. Figone was confined in jail on these charges when called as a witness.
In the course of its case the defense called Figone as a witness. The court promptly excused the jury. The judge then inquired of the witness whether he had counsel, and the latter responded he had consulted with counsel (Mr. Metro) who had advised him to "testify to the truth." When the court *73 pressed the witness as to whether counsel advised him to testify, the witness said:
I think it's right that I should testify, not that he advised me. I think it's right that I should tell the truth.
The judge expressed the view that in view of the "very serious charge" against Figone, Mr. Metro should be given the opportunity of telling the court "his position * * * in this case." Defense counsel advised the court she had informed Mr. Metro the day before that she was calling Figone as a witness and he had said he had no objection. A recess was called during which the judge phoned Mr. Metro and ascertained the latter desired to be present during any testimony he might advise the witness to give. The case was recessed (on a Friday) to permit Mr. Metro to be present the following Monday morning.
On the resumption of the trial on Monday the defense called Figone again, and the court again excused the jury. On inquiry by the court, Mr. Metro stated he was advising the witness not to testify on grounds of self-incrimination. Figone answered "yes" to the court's question whether he understood that counsel was advising him not to answer any questions which might incriminate him. But the witness was not asked whether he would himself invoke the privilege not to incriminate himself. The prosecutor suggested there be a voir dire interrogation of the witness out of the presence of the jury, and the court acceded, in order to "see if the questions are permissible." No one, including Mr. Metro, objected to the procedure.
Defense counsel proceeded at once to question Figone as to his knowledge concerning the shooting. At the first question, Mr. Metro stated he was advising his client not to answer. The court directed the witness to answer the questions. Thereupon the witness, over periodic continuing objections by Mr. Metro, testified he was present at the shooting and saw defendant shoot Farrell after the latter turned to cut defendant *74 with his knife. He said he came there with Farrell, the latter driving Figone's car, but not expecting any shooting, and he left the scene with defendant immediately afterwards. When, on cross-examination, Figone was asked whether, later that day, he went to get "CO-2 guns" in Newark, and Mr. Metro objected again, the witness responded, "I don't want to answer that question." The court remarked, "I can't compel him to answer that one." The witness continued to refuse to answer questions about the guns but answered all others.
After the testimony on "voir dire" the judge ruled he would "respect Mr. Metro's objections" and refuse to "compel" the witness to testify as such testimony would tend to incriminate the witness because the conflict between his grand jury testimony and the voir dire testimony, if repeated before the jury, would expose him to a charge of false swearing. (Later in the case the judge indicated that his action had been based also on Figone's potential implication of himself as a principal in the homicide.)
Defense counsel thereupon requested that "Mr. Figone [be] called to the stand in front of the jury and plead the Fifth Amendment in front of the jury * * *." She argued:
Your Honor, he can't refuse to take the stand. He can refuse to testify. I would like him called to the stand, and then let him plead the Fifth Amendment, because only the defendant has a right not to take the stand in the first place. [Emphasis added]
The court responded it would not "permit" Figone to testify as he "would clearly incriminate himself."
When, after further argument on other matters, counsel renewed her request that Figone be called to the stand to see whether he might decide to testify or "formally waive" his right not to, the court responded, "I see no reason for it. It's time consuming * * * Mr. Metro has announced to this court that Mr. Figone will not testify. Am I correct, Mr. Metro?" Mr. Metro said: "Yes, your Honor." (Emphasis added). But it is clear that Mr. Metro had made no such announcement.

*75 I
It is and long has been fundamental that the privilege against self-incrimination is personal to the individual claimant, and the election to invoke it must be exercised by the witness himself, on the stand and under oath, after hearing a question or questions addressed to him. It is not invocable by an attorney as his surrogate. State v. Williams, 59 N.J. 493, 502 (1971); In re Boiardo, 34 N.J. 599, 604 (1961); State v. Fary, 19 N.J. 431, 435 (1955); State v. Mohr, 99 N.J.L. 124, 129-130 (E. & A. 1924); In re O'Shea, 166 F. 180, 182 (D.N.J. 1908); United States v. Willis, 145 F. Supp. 365 (M.D. Ga. 1955); United States v. Johnson, 76 F. Supp. 538, 540 (M.D. Pa. 1947); Bouschor v. United States, 316 F.2d 451, 458 (8 Cir.1963); State v. Kiser, 98 N.E.2d 322 (Ohio Ct. App. 1950); State v. Brown, 221 La. 394, 59 So.2d 431 (La. Sup. Ct. 1952).
The barrier to self-incrimination of a witness is up "only when the witness himself chooses to put it up." State v. Fary, supra (19 N.J. at 435). Moreover, even "the witness may not claim the privilege until the question is put * * * and if he answers the question without claiming the privilege he irrevocably waives it." Ibid.
There are important reasons why a claim of the privilege is thus closely circumscribed. The first is that it is at war with the great objective of the trial  the ascertainment of the truth as to the issues contested. State v. DeCola, 33 N.J. 335, 344 (1960); In re Pillo, 11 N.J. 8, 19 (1952); and see, State v. Briley, 53 N.J. 498, 506 (1969). Secondly, as noted in In re Boiardo, supra, "* * * it is the witness, and not counsel, who must so state [the area in which he claims an answer to a question will incriminate him], and must do so under oath, for it is the penalty of perjury which is the sole assurance against a spurious assertion of a claimed apprehension". 34 N.J. at 604; (Emphasis added).
So strongly was the concept of the personal nature of the privilege once held in this State that Chief Justice Gummere *76 expressed the view, in State v. Mohr, supra (99 N.J.L. at 129-130), "that the witness has no right to be attended by his personal counsel (who has no place in the trial of the cause) and receive from him advice as to whether or not he shall answer a given question." A softer view in that particular regard was later expressed by Chief Justice Weintraub in State v. Decola, supra (33 N.J. at 355-356), who said:
* * * if circumstances reasonably allow, counsel should be permitted both to advise the witness and to assist the court in passing upon a claim of privilege.
See also, State v. Williams, supra, 59 N.J. at 503.
But the foregoing in nowise qualifies the admonitions in Boiardo and Fary, both supra, that only the witness personally may claim the privilege and then only when faced, under oath, with a specific question.
The principles outlined above reveal the error of the trial court's course in this case. While the court cannot be faulted for calling in Figone's counsel to assure itself the witness would not be sacrificing his rights thorugh ignorance, the conduct of a voir dire to determine whether the witness's testimony before the jury would be self-incriminating was plainly both premature and self-defeating. First, the witness had not himself yet claimed the privilege; second, drawing incriminatory responses from him was just as damaging to him on voir dire as if before the jury. Even if the witness were claiming his privilege (as here he was not; see infra) the court would have properly been called upon to rule thereon without requiring the witness to reveal the totality of the incriminatory story but only "enough to indicate a basis for fear [of incrimination] while withholding facts which would prove it." State v. DeCola, supra (33 N.J. at 350); In re Pillo, supra (11 N.J. at 19-20). There was, moreover, the danger to the witness in the course taken *77 of leading him into a waiver of the privilege through his detailing of any of the pertinent facts.[1]State v. Fary, supra.
But what is determinative of this appeal is that the witness never was required by the court personally to claim the privilege purportedly sought for him by his counsel. As noted, on the voir dire he answered all questions concerning the homicide itself without apparent hesitancy or protest despite objections by his counsel; he never once uttered a hint of claim of privilege during the extended colloquy between the court and all three counsel; and, most important, the court denied defendant's repeated requests that the witness be put on the stand before the jury and required personally either to answer questions or to claim and show the basis for an assertion of his privilege.
The trial court was not justified, when defendant's vital interests in adduction of Figone's favorable testimony were at stake, in inferring a claim of privilege by the witness personally from his counsel's several statements that he was advising the witness not to testify or even from counsel's accordant answer to the court's interrogatory assertion of its understanding that the witness would not testify. Not only is such an inference not a permissible substitute under the cases for testing the witness' personal intentions on the stand under oath (or affirmation), but there was substantial doubt about it here in the light of the witness's strong expression when first called of a desire to testify to "the truth" independently of counsel's advice and the readiness with which he told his whole version of the shooting (on voir dire), discriminatingly withholding only information as to the asserted later acquisition of guns. These considerations *78 gain added emphasis in this particular case where defendant was on trial for his life.
We note, in passing, that the court erred in its view that the witness would be incriminating himself as to false swearing or perjury by the conflict between his grand jury testimony and that which he gave on the voir dire. State v. DeCola, supra (33 N.J. at 351-352); State v. Williams, supra.
For the reasons stated there must be a reversal and a new trial at which, if defendant calls Figone as a witness, the latter shall be required to take the stand before the jury under oath (or affirmation), await specific questions, and either answer them or personally assert and demonstrate a basis for not doing so grounded in a claim of self-incrimination.

II
Defendant asserts the prosecution violated his right to due process by indicting Figone when it appeared the latter intended to testify for the defense, while giving immunity to another witness who promised to and did testify for the State. He relies upon Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942), which held a prima facie right to a hearing in federal habeas corpus was established by a verified petition that the Kansas authorities obtained petitioner's criminal conviction by deliberately suppressing testimony favorable to him and knowingly adducing against him perjured testimony.
We cannot find what is adduced here to resemble the showing by the petitioner in Pyle. There is not the slightest basis to doubt that the prosecutor here believed in good faith that he had a valid murder case against defendant and that the testimony of his witnesses against defendant was the truth. While the circumstances attending the pressures mounted against Figone may raise some suspicion of high-handedness, *79 what is demonstrated is far from a showing amounting to denial of due process to defendant.

III
Plain error is argued in relation to the prosecutor's comments in summation concerning the course of the bullet through the decedent's head and the inferences drawn therefrom as to the respective positions of the defendant and the victim. We conclude the remarks in question were permissible inferences from the autopsy report admitted in evidence. In any event, there is no such manifest injustice as would amount to plain error.

IV
Defendant argues that the activation by the trial court of the multiple offender statute against him consequent upon the jury's verdict was a denial of equal protection of the laws for the reason that the statute is rarely invoked in Union County. He specifically complains of the court's quashing a subpoena issued by defendant to the prosecutor seeking records as to the number of multiple offenders actually sentenced as such in the county in the past 20 years.
We find no error in the quashing of the subpoena. Defendant cites no authority to support his contention although it is common knowledge that use of the multiple offender statute is selective and not uniform. But the statute does not create a new substantive crime; it is merely a vehicle for imposing a greater penalty for the particular crime "where such defendant has persistently engaged in unlawful activities." State v. Washington, 47 N.J. 244, 248-249 (1966). In that sense, use of the statute by the court is merely a phase of the permissible exercise of discretionary judgment as to what is appropriate punishment for a particular offender within available legal limits. The statute authorizes the court to require the filing of a multiple-offender accusation when the court thinks the current offense *80 is such as to warrant imposition of a greater penalty than the maximum allowable by law for that offense. N.J.S.A. 2A:85-13. We find no arbitrary exercise of discretion in that regard below, nor do we see any possibility that permitting the discovery sought by defendant would have promoted any proper purpose relevant to the issue of appropriate punishment of this defendant. However, in view of our conclusion in I, above, the judgment and sentence must be set aside in toto.
Reversed and remanded for a new trial.
NOTES
[1] We do not decide whether there was waiver here, as defendant has not raised the point. A factor against waiver may be thought to inhere in the nature of the court's direct interrogation of the witness at the beginning of the voir dire, possibly justifying an inference that the witness deemed himself ordered to testify.