731 A.2d 77 (1999)
322 N.J. Super. 385
STATE of New Jersey, Plaintiff-Respondent,
v.
Timothy Jerome SMITH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1999.
Decided June 25, 1999.
*79 J. Michael Blake, Assistant Deputy Public Defender, for defendant-appellant (Ivelisse Torres, Public Defender, attorney; Mr. Blake, of counsel and on the brief).
Jafer Aftab, Deputy Attorney General, for plaintiff-respondent (John J. Farmer, Attorney General, attorney; Mr. Aftab, of counsel and on the brief).
Before Judges MUIR, Jr., KEEFE, and COBURN.
*78 The opinion of the court was delivered by COBURN, J.A.D.
The indictment charged defendant, Timothy Jerome Smith, with the following offenses: murder, N.J.S.A. 2C:11-3a(1) or (2) (count one); felony murder, N.J.S.A. 2C:11-3a(3) (count three); first-degree robbery, N.J.S.A. 2C:15-1 (count four); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a (count five); third-degree hindering apprehension, N.J.S.A. 2C:29-3 (count six); and fourth-degree attempt to unlawfully dispose of a handgun, N.J.S.A. 2C:39-9d and N.J.S.A. 2C:5-1 (count seven). His codefendants, Gerald Lydell Wilson and Darrell A. Williams, were charged with murder, as accomplices, under count two, and with the remaining offenses.
Williams negotiated a plea agreement and testified for the State at the trials of Wilson and Smith. Wilson was tried first. The jury acquitted him of murder and hindering apprehension but found him guilty of aggravated manslaughter, under count two, and of the charges set forth in counts three, four, and seven.
Smith's trial resulted in a hung jury on count one (the jury could neither agree on the main charge of purposeful/knowing murder nor on the lesser included charges of aggravated manslaughter and manslaughter) and guilty verdicts on the remaining counts.
The judge sentenced Smith to an aggregate term of life plus sixteen years and six months, thirty-eight years and three months without parole. After merging the robbery conviction, count four, into count three, the components of the sentence *80 were: on count three, felony murderlife imprisonment, thirty years without parole; on count five, possession of a handgun for an unlawful purposea consecutive term of ten years, five years without parole; on count six, hindering apprehensiona consecutive term of five years, two years and six months without parole; and on count seven, attempted unlawful disposition of a handguna consecutive term of eighteen months, nine months without parole.
The State's thesis was that Wilson proposed the robbery to the others and drove the getaway car, that Smith and Williams accosted the victim, and that Smith, as indicated in his confessions and as corroborated by Williams, brought the gun to the robbery scene and fired the bullet that caused the victim's death. Smith testified at trial, admitting his participation in the robbery, but claimed that Williams was the shooter and that he was unaware of the presence of the gun until Williams took it from his pocket and pointed it at the victim. He added, however, that after the gun was displayed, he repeatedly kicked the victim as he lay on the ground and demanded his money.
On appeal, defendant raises five points of alleged error.
Point I concerns a proposed defense witness, Johnny Thomas, who invoked the constitutional privilege against self-incrimination as a basis for not testifying. Although the witness was not involved in the commission of the crime and his only concern was that his testimony describing the criminal event might be inconsistent to some undefined extent with a prior statement he had given the police, the judge ruled that the privilege had been properly invoked. Defendant contends the ruling deprived him of his fundamental right to present exculpatory evidence. We disagree with the judge's ruling, but we are also satisfied that the error was not prejudicial since the record is barren of any indication that Thomas's testimony would have helped defendant.
Point II relates to defendant's conviction for felony murder and his claim, under the affirmative defense afforded by N.J.S.A. 2C:11-3a(3), that he was not the shooter and had no reason to believe his accomplice was armed. Defendant argues that the judge committed plain error by failing to charge that the State had the burden of disproving the defense. While the charge was erroneous in that respect, the error does not warrant reversal because the defendant admitted at trial that he continued to participate in the robbery by kicking the victim and demanding his money after his accomplice displayed the gun.
Point III addresses the failure of the judge to define attempt in the robbery charge. Defendant contends that this error warrants reversal of his convictions for robbery and felony murder. Since the issue was not raised below and attempt was defined elsewhere in the charge, we reject the contention.
Point IV involves claims of prosecutorial misconduct arising from comments made by the prosecutor during his summation. Since the comments were clearly within the bounds of fair advocacy and produced no objection from the defense, we are satisfied that this argument is without merit and does not warrant discussion in a written opinion. R. 2:11-3(e)(2).
Point V begins with the argument that count five, possession of the weapon for an unlawful purpose, for which defendant received a ten year consecutive sentence, should have been merged with the conviction for felony murder, and goes on to suggest that the overall sentence was excessive. We agree that merger is required, but we reject the contention that the remaining term of imprisonment is excessive.

I.
A few minutes after midnight, on February 27, 1995, Robert Hess, the manager of the International House of Pancakes ("IHOP") in Fair Lawn, was shot and *81 killed during a robbery. He had just left the IHOP accompanied by three employees: Johnny Thomas, who immediately began walking toward Route 4 to get into his car; Horace Brooks, who started walking toward the pay telephone at the rear of the IHOP; and Eugene Haywood, who remained to talk with Hess as he locked the entrance doors.
While Wilson waited in the getaway car, defendant Smith and Williams, who is almost six feet tall, quickly approached Hess. Brooks ran when he saw that one of the men had a gun. Haywood testified that the shorter man, whom he described as about five foot three, was carrying a handgun.
According to Williams, as corroborated by Haywood and by numerous statements made to or in front of the police by Smith following his arrest, Smith was carrying the handgun when they ran up to Hess. Williams grabbed some papers from Hess's hand, thinking they might contain money. Immediately realizing the papers were valueless, he dropped them, and he and Smith attacked Hess, forcing him to the ground. Smith demanded money and Hess screamed. Williams and Smith pummeled and kicked Hess, who continued to scream. To minimize attention, they dragged him toward the rear of the IHOP parking lot, patted him down for money, and found nothing. As Hess continued to scream, Smith pointed the gun at his head. When Hess grabbed for the gun, Smith pulled it away and a shot fired. Williams ran, Smith followed, and they entered the getaway car and fled. During the flight, Smith gave the gun to Wilson so that he could sell it, which he later did.
At trial, Smith testified that he and his codefendants had conspired to commit the robbery but had agreed no weapons would be used. He did not have a gun, and he was surprised when Williams displayed the gun during the robbery. According to Smith, "Hess fell to the ground and both of us went on opposite sides and at that point that's when I saw the gun." He was then asked to describe what happened after Hess fell. He replied, "Once he was on the ground he began yelling. We was just yelling at him, `Give us the money. Give us the money.' And we was kicking him and hitting him." Concerned about the noise, and the attention it might bring, they decided to leave. Smith noticed that Hess was holding Williams by the leg of his pants. Williams responded by telling Hess to "[g]et off me" and then by firing the shot. Afterwards, they ran to the getaway car and took off.

II.
Under Point I of his brief, defendant argues that the trial judge erred by refusing to require a proposed defense witness to testify despite his assertion of the Fifth Amendment privilege against self-incrimination.
There was no suggestion that the witness, Johnny Thomas, was involved in the crime. He was one of the employees who accompanied the victim as he and the other two employees left the IHOP. He had given the police a sworn statement that implicated Smith as the shooter; however, he had later informed the police that the statement was false. Apart from indicating that the witness had recanted, defense counsel did not provide the judge with an offer of proof regarding the nature of the proposed testimony.
When Thomas was called into court, pursuant to defendant's subpoena, for a hearing on whether he would be required to testify, he was accompanied by counsel. Although Smith contends that the judge arranged for counsel, the record does not support that contention. Addressing Thomas's counsel, the judge noted that the witness had indicated he "was going to exercise his privilege" and asked if that was true. Actually, the record does not reveal any such indication by the witness. Apparently, the judge reached that conclusion because he presided over the prior trial of codefendant Wilson where the witness *82 had successfully asserted the privilege. In any case, counsel said that she had discussed the matter with Thomas and that he did not want to testify based on his privilege against self-incrimination. The judge briefly questioned Thomas without placing him under oath. Thomas asserted the privilege, and the judge sustained its exercise on the ground that testifying at odds with the sworn statement might incriminate Thomas because of the differences that might arise between the sworn statement and his trial testimony.
We have observed that "it is generally within a trial judge's discretion to apprise a witness, who has been subpoenaed to appear, of his privilege against self-incrimination." State v. Johnson, 223 N.J.Super. 122, 130, 538 A.2d 388 (App.Div.1988), certif. denied, 115 N.J. 75, 556 A.2d 1218 (1989). But, in a footnote to that quotation we added this comment:
Obviously, the paramount interest, in the context of a criminal trial, is the free flow of information. Weighed against that interest, the prospect that a witness may ultimately be charged with an offense by reason of what he says on the stand pales in significance.

[Id. at 130-31 n. 3, 538 A.2d 388.]
The procedures to be followed by a trial judge when the privilege against self-incrimination may be implicated are summarized in State v. Jennings, 126 N.J.Super. 70, 75-78, 312 A.2d 864 (App.Div.), certif. denied, 60 N.J. 512, 291 A.2d 374 (1972), and were specifically approved by the Supreme Court in State v. Jamison, 64 N.J. 363, 378, 316 A.2d 439 (1974). The privilege cannot be invoked for a witness by his attorney. State v. Jennings, supra, 126 N.J.Super. at 75, 312 A.2d 864. The witness must take the stand and be placed under oath. Ibid. He may not claim the privilege until a question is asked, and if he replies without asserting the privilege, he waives it. Ibid. Although the witness has no right to personal counsel, id. at 75-76, 312 A.2d 864 (citing State v. Mohr, 99 N.J.L. 124, 129-30, 122 A. 837 (E. & A.1924)), "`if circumstances reasonably allow, counsel should be permitted both to advise the witness and to assist the court in passing upon a claim of privilege,'" id. at 76, 312 A.2d 864 (quoting State v. DeCola, 33 N.J. 335, 355-56, 164 A.2d 729 (1960)). In questioning the witness, the judge should not require "the witness to reveal the totality of the incriminatory story but only `enough to indicate a basis for fear [of incrimination] while withholding facts which would prove it.'" Ibid. (alteration in original) (quoting DeCola, supra, 33 N.J. at 350, 164 A.2d 729).
In the instant case, the judge erred by failing to place the witness under oath and by failing to have him reveal sufficient information to support his fear of self-incrimination. Moreover, the judge did not recognize that the possible contradictions between the witness's prior sworn statement and his proposed testimony were, as a matter of law, an inadequate basis for assertion of the privilege. The Supreme Court addressed this issue in DeCola, and reconfirmed the point in Jamison, supra, in the following words:
In passing, it should be noted that the sustaining of the privilege in respect of potential conflict of new testimony by the witness with the prior statement under oath, and the consequent possibility of self-incrimination in relation to false swearing or perjury, was erroneous. Under State v. DeCola, supra, the witness should have been required to testify, being protected as a matter of law against the use of such testimony in any later prosecution for false swearing or perjury (33 N.J., at 351-352 [164 A.2d 729]).

[64 N.J. at 379, 316 A.2d 439.]
Although we are satisfied, on the basis of the authorities discussed above, that the judge erred in refusing to require the witness to testify, we are equally satisfied that the error may not be viewed as prejudicial in this context because of counsel's failure to demonstrate, by an offer of *83 proof, that the testimony might be of assistance to the defendant. State v. Abbott, 36 N.J. 63, 77-78, 174 A.2d 881 (1961) ("Without such disclosure, an appellate court cannot readily evaluate whether the exclusion, although erroneous, resulted in manifest wrong or injury."); State v. Johnson, 46 N.J. 289, 291-92, 216 A.2d 392 (1966); State v. Millett, 272 N.J.Super. 68, 100, 639 A.2d 352 (App.Div. 1994).

III.
Defendant's second point is based on the judge's failure to properly charge the jury on the affirmative defense to felony murder set forth in N.J.S.A. 2C:11-3a(3), which provides
that in any prosecution under this subsection, in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:
(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.
Although the judge quoted the statute, he did not charge the jury that the State had the burden of disproving the defense. That course was inconsistent with the Model Jury Charge (Criminal), Homicide § 6, and violated the legislative commands contained in N.J.S.A. 2C:1-13b(1) and (2). Under those subsections, the State is required to disprove an affirmative defense if there is evidence supporting it, unless the code or another statute "requires the defendant to prove [the defense] by a preponderance of evidence or such other standard as specified in this code." Since the felony murder affirmative defense does not contain language placing the burden of persuasion on a defendant, a proper jury instruction must advise that the State has the burden of disproving the defense beyond a reasonable doubt. Cf. State v. Kelly, 97 N.J. 178, 200, 478 A.2d 364 (1984) (holding that "if any evidence raising the issue of self-defense is adduced ... the jury must be instructed that the State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts").
The difficulty with defendant's position in this case is that he was not entitled to any instruction on the defense. The jury is only to be instructed on a defense if there is some evidence supporting it. N.J.S.A. 2C:1-13b(a); State v. Kelly, 97 N.J. 178, 200, 478 A.2d 364 (1984) (describing defendant's burden of production as "any" evidence); State v. Powell, 84 N.J. 305, 317, 419 A.2d 406 (1980) (endorsing in quoted material the characterization of defendant's burden of production as "slight"). Although defendant's testimony provided support for elements N.J.S.A. 2C:11-3a(3)(a), (b), and perhaps (d), it did not provide any support for (c). We reject defendant's claim that he "[h]ad no reasonable ground to believe that any other participant was armed with [a deadly] weapon." N.J.S.A. 2C:11-3a(3)(c). The flaw in the defense came from the defendant's own testimony to the jury: he admitted, on direct examination, that after he saw his accomplice display the handgun, he actively continued to perpetrate the robbery by demanding money and kicking the victim.
The issue implicated by these facts has not been addressed in New Jersey, but we have the benefit of decisions of the appellate *84 courts of the State of New York that support our position, and we have found no contrary authority. New York's affirmative defense to felony murder is identical to ours, with the exception that New York places the burden of persuasion, by a preponderance of the evidence, on defendant. N.Y. Penal Law § 125.25[3].
In People v. Diaz, 177 A.D.2d 500, 576 N.Y.S.2d 144 (1991), leave to appeal denied, 79 N.Y.2d 1048, 584 N.Y.S.2d 1015, 596 N.E.2d 413 (1992), defendant appealed his conviction for felony murder, arguing that the judge's failure to charge the jury on the affirmative defense denied him a fair trial. The court sustained the ruling, noting that the
defendant continued to participate in the robbery after his accomplice displayed the gun and while the fatal assault continued. Thus, the record does not contain a sufficient basis to establish every element of the affirmative defense, and the trial court's refusal to charge was proper.

[Id. at 146 (citation omitted).]
Cf. People v. Heyward, 111 A.D.2d 420, 488 N.Y.S.2d 486, 487 (1985) (holding that a defendant was not entitled to the affirmative defense where the evidence did not support his contention that he did not aid in the homicidal act).
Like the defendant in Diaz, this defendant continued to actively pursue the criminal objectives he admittedly shared with his accomplice after the weapon was drawn by beating the victim, as he lay on the ground, and demanding his money. We emphasize, however, that it was not defendant's continued presence alone that negated the affirmative defense. Had the gun, for example, been suddenly drawn and fired before the defendant could react, the defense would have been in the case. Also, had defendant ceased his active involvement when the gun was drawn, a charge on the defense would have been required. But, by his own admission, defendant's active participation continued thereafter. Consequently, he had no right to a consideration of the defense by the jury.
The question remains whether the charge, as given, flawed by the judge's failure to tell the jury the State had the burden of disproving the defense, deprived defendant of a fair trial. We think not. A similar problem arose in State v. Reyes, 140 N.J. 344, 658 A.2d 1218 (1995). The defendant produced evidence at his trial bearing on the defense of diminished capacity but was convicted of murder nonetheless. On appeal from the denial of a petition for post-conviction relief, he argued that he was entitled to a reversal because the charge contained the "`preponderance of the evidence filter' condemned by the Third Circuit in Humanik v. Beyer, 871 F.2d 432 (3d Cir.), cert. denied, 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed2d 25 (1989)." Reyes, supra, 140 N.J. at 346, 658 A.2d 1218. Our Supreme Court, noting that the evidence was inadequate to justify submission of the defense, rejected the argument, holding that it was not "error to give Reyes a flawed diminished-capacity jury charge because he had not been entitled to such a charge in the first place. If there was any error in Reyes's jury charge, it was harmless because he received the potential benefit of a charge to which he had not been entitled." Id. at 361, 658 A.2d 1218. Under similar circumstances, the same result was reached earlier in State v. Watson, 261 N.J.Super. 169, 178-81, 618 A.2d 367 (App. Div.1992), certif. denied, 133 N.J. 441, 627 A.2d 1145 (1993), and in State v. Carroll, 242 N.J.Super. 549, 557-63, 577 A.2d 862 (App.Div.1990), certif. denied, 127 N.J. 326, 604 A.2d 600 (1991).
The State's position is even stronger in this case than it was in Reyes because here the flawed charge did not shift any burden of persuasion to defendant; it was silent on that issue, going no further than describing the defense as "affirmative." As given, the charge merely highlighted circumstances under which a defendant, *85 whose evidence arguably supported the affirmative defense, ought not to be convicted of felony murder. Thus, as in Reyes, Watson, and Carroll, defendant suffered no prejudice because he "received the potential benefit of a charge to which he [was] not entitled." Reyes, supra, 140 N.J. at 361, 658 A.2d 1218.

IV.
In his third point, defendant contends that his convictions for robbery and felony murder should be reversed because the charge on robbery did not include a definition of attempt. This issue was not raised in the trial court and is before us under the plain error rule. R. 2:10-2.
In State v. Gonzalez, 318 N.J.Super. 527, 723 A.2d 1278 (App.Div.1999), a robbery and felony murder case, we reversed the conviction because there was no evidence of a completed theft and that portion of the robbery charge explaining theft failed to include a charge on attempt in accordance with the elements set forth in N.J.S.A. 2C:5-1.[1]Id. at 533-36, 723 A.2d 1278. We held:
Since theft or attempted theft from the person is not a predicate crime for felony murder, the failure to charge the concept of attempt in the predicate offense of robbery, and its specific component, "substantial step," N.J.S.A. 2C:5-1b, constitutes plain error.

[Id. at 536, 723 A.2d 1278.]
But Gonzalez is distinguishable from the instant case because here, albeit during an explanation of the law relating to another offense, the attempt to sell a weapon, the judge fully and accurately instructed the jury on the elements of attempt in these words:
The law provides a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the crime, purposely does or omits to do anything which, under the circumstances a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.
....
However, the step taken must be one which is strongly corroborative of defendant's criminal purpose. The accused must be shown to have had a firmness of criminal purpose in light of the steps the accused has already taken. However, these preparatory steps must be substantial and not just very remote preparatory acts.
By contrast, in Gonzalez, supra, there was no definition of attempt anywhere in the charge. 318 N.J.Super. at 536, 723 A.2d 1278.
In deciding whether a jury instruction is erroneous, it must be considered in the context of the entire charge. State v. Jordan, 147 N.J. 409, 422, 688 A.2d 97 (1997). When the issue is raised as plain error, the legal impropriety should be ignored unless it is "sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." Ibid. (internal quotation and citations omitted). Here, the defendant testified that he helped plan *86 the robbery and assisted in carrying it out. Given that testimony, coupled with the overwhelming evidence of defendant's guilt, and the appearance elsewhere in the jury instructions of a proper charge on attempt, we have no doubt that the failure to define attempt in the robbery charge did not prejudice defendant's rights.

V.
Defendant's last point concerns the sentence imposed by the trial judge. He argues that the judge erred in failing to merge count five, possession of the gun for an unlawful purpose, with the robbery conviction because there was no evidence that the gun was possessed for any purpose other than commission of the substantive offenses. We agree. As the Court said in State v. Diaz, 144 N.J. 628, 677 A.2d 1120 (1996), "[w]hen the only unlawful purpose in possessing the gun is to use it to commit the substantive offense, merger is required." Id. at 636, 677 A.2d 1120. Defendant also contends that the judge erred in sentencing him consecutively on counts six (hindering apprehension) and seven (attempted unlawful disposition of a handgun). Since these offenses were distinct crimes, committed at different times and places, the consecutive sentences conformed to the principles of law set forth in State v. Yarbough, 100 N.J. 627, 643-44, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).
We also reject defendant's contention that the judge erred in imposing parole ineligibility periods for the sentences under counts six and seven, and his further argument that the judge should not have imposed life imprisonment on the felony murder conviction. The judge found numerous aggravating factors and defendant does not contend that the evidence failed to support those findings. Rather, he argues that the judge should have given more weight than he did to the mitigating factor of defendant's lack of a prior criminal record. As an appellate court, we are obliged to respect the sentence imposed by the trial judge unless there has been an abuse of discretion. State v. Gardner, 113 N.J. 510, 516, 551 A.2d 981 (1989). When, as here, the evidence supports the judge's findings and balancing of the sentencing factors, appellate interference is only appropriate if the sentence is so unreasonable as to shock the judicial conscience. Ibid. The sentence, as modified by the merger of count five, is not unreasonable to that degree.
Affirmed and remanded for entry of a corrected judgment in accordance with this opinion.
NOTES
[1] In pertinent part, N.J.S.A. 2C:5-1 provides:

a. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
(1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
....
(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.
b. Conduct shall not be held to constitute a substantial step under subsection a(3) of this section unless it is strongly corroborative of the actor's criminal purpose.