**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2852-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRANDON G. DIXON,

     Defendant-Appellant.

_____

        Submitted December 12, 2018 – Decided March 15, 2019

        Before Judges Alvarez and Mawla.

        On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 13-11-1560.

        Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Deputy Public Defender, of counsel and on the brief).

        Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Brandon G. Dixon was convicted of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1) and (2); as well as second-degree desecration of human remains, N.J.S.A. 2C:22-1(a)(1). He was acquitted of third-degree arson, N.J.S.A. 2C:17-1(b)(5). On June 22, 2016, the judge sentenced him to an extended term as a repeat violent offender, pursuant to N.J.S.A. 2C:43-7.1(b), to a term of life imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on the first-degree felony murder and robbery, to be served concurrent to a seven-year term of imprisonment on the desecration of human remains offense. We now affirm.

The following facts and circumstances are taken from the record of the week-long trial. On January 25, 2013, defendant killed the victim, Charles Bauer, during a robbery planned by defendant and his co-defendant, Ryan J. Sweet. According to the Burlington County Medical Examiner, the victim died as a result of poor oxygen delivery to his brain. The only explanation for the death was that the victim was put in a "sleeper hold" and died as a result because he was not expecting the assault and therefore did not struggle. The scratches and marks on the victim's face and torso were consistent with his body being dragged post-mortem over rough surfaces for a short distance.

Also charged with second-degree desecration of the victim's body were the following: Patrick N. Bush, Ryan J. Sweet, and Paul C. Martell. Sweet's mother was separately charged with fourth-degree hindering, N.J.S.A. 2C:29-3(a)(7). Sweet was charged with the amended offense of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a). Andrew J. Baith was charged with third-degree desecration of human remains, N.J.S.A. 2C:22-1(b). With the exception of defendant's mother and Martell, all entered guilty pleas and testified against defendant.

At the time of the killing, Sweet and his sixteen-year-old girlfriend were the parents of a two-month-old baby. The girlfriend had flirted with the victim on Facebook when she and Sweet had a falling-out, and when she reconciled with Sweet, she asked him to stop the victim from contacting her. Sweet told her that he would take care of it, had her block the victim on Facebook, and had her give the victim Sweet's cell phone number as if it was her own. Sweet and defendant then lured the victim to his death.

At the time, Sweet had a broken leg, so he asked defendant to deal with the victim for him. Defendant and Sweet were friends, and defendant was staying in Sweet's home. Sweet and defendant agreed that when the victim arrived for the rendezvous, defendant would steal his marijuana and his car.

Baith overheard defendant and Sweet planning to rob the victim, and saw defendant leave Sweet's home with a chain wrapped around his hand. Sweet stayed behind.

When defendant returned to Sweet's home, he asked Baith to leave the room. Baith overheard defendant tell Sweet that "something went wrong" and "the guy got hurt bad." Defendant then told Baith that a man had died and he needed a rope to tie him up. Baith found a red dog leash and gave it to defendant; the dog leash was later identified as the strap found around the victim's legs.

Sweet told Baith that defendant killed the victim by placing him in a "rear naked choke hold." Baith also testified that defendant told him he had trained in mixed martial arts and "almost went . . . professional."

Baith and defendant attempted to dispose of the body, and burned some of the victim's clothes. They placed the victim face down on a frozen pond in nearby woods, and attempted unsuccessfully to break through the ice so they could lower the body into the water. They eventually abandoned the effort and went home.

Baith and defendant smashed the victim's car windows to get inside. Defendant removed the victim's identification and phone, and smashed the

4

phone on the ground. The men failed to set fire to the vehicle, although they splashed gasoline around the tank and tried to light it.

Bush, Sweet's mother's paramour, was also involved in the effort to hide the body. Bush initially drove the vehicle that contained the victim's body, became suspicious, and asked defendant about the contents of the trunk. Defendant told him not to worry about it. The following morning, when pressed, defendant told Bush that everything would be alright and that he put the victim in a choke hold and put him to sleep. When Bush continued to press him for details, defendant explained that he met up with someone who took a swing at him so he put the person in a choke hold. Defendant threatened Bush that if he mentioned the incident to anyone, he would be "next."

Eventually, police located the victim's vehicle, found his body, and identified the men who had been witnessed near his car. Defendant was arrested in Pennsylvania, hiding underneath a bed in his girlfriend's dormitory room.

The authorities retrieved the text messages between Sweet and the victim, and the Facebook pages containing communication between Sweet's girlfriend and the victim. At the time of defendant's arrest, marijuana presumably taken from the victim was found in the girlfriend's room.

During the trial, the defense theory was that Sweet was the killer, because he too had substantial martial arts expertise, and lied about the extent his broken leg disabled him. During closing, trial counsel extensively attacked the credibility of all the witnesses against defendant, all of whom had strong ties to Sweet but not defendant.

Upon receiving the presentence report, the trial judge communicated to counsel that pursuant to statute, defendant had to be sentenced under the three strikes law. Trial counsel objected, not because of any potential challenge to the prior convictions, a second-degree robbery and a third-degree aggravated assault, but on the basis that proper notice had not been given by the State prior to sentence. The judge found that N.J.S.A. 2C:43-7.1(b) mandated the imposition of a life sentence, and that the month's warning he had given counsel adequately substituted for notice from the State within two weeks of conviction. The judge also found, in sentencing, aggravating factors three, six, and nine, and no factors in mitigation. See N.J.S.A. 2C:44-1.

On appeal, defendant raises the following points:

> POINT I
> IT WAS REVERSIBLE ERROR TO HAVE FAILED
> TO CHARGE AGGRAVATED AND RECKLESS
> MANSLAUGHTER, WHICH WERE CLEARLY
> INDICATED BY THE RECORD. MOREOVER, THIS
> FAILURE WAS EXACERBATED BY A FAULTY

ACCOMPLICE LIABILITY CHARGE THAT OBLITERATED THE CRUCIAL DISTINCTION BETWEEN THE MENS REA OF THE PRINCIPAL AND THE MENS REA OF THE ACCOMPLICE.

A.    Introduction.
B.    The Failure to Charge Clearly-Indicated Lesser-Included Offenses.
C.    The Faulty Accomplice Liability Charge.
D.    Conclusion.

POINT II
THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY REGARDING THE STATUTORY AFFIRMATIVE DEFENSE TO FELONY MURDER CONSTITUTED PLAIN ERROR.

POINT III
THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE TIMING OF THE USE OF FORCE, AND ON SELF-DEFENSE AS A DEFENSE TO ROBBERY, CONSTITUTED PLAIN ERROR.

POINT IV
THE TRIAL WAS SO INFECTED WITH ERROR THAT EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF THE ERRORS DENIED DEFENDANT A FAIR TRIAL.

POINT V
THE MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE SENTENCING COURT IGNORED A CLEARLY SUPPORTED MITIGATING FACTOR.

POINT VI
DEFENDANT MUST BE RESENTENCED TO AN
ORDINARY TERM OF IMPRISONMENT BECAUSE
THE STATE'S MOTION FOR A "THREE STRIKES"
EXTENDED TERM WAS NOT FILED WITHIN
FOURTEEN DAYS OF THE JURY'S VERDICT AS
REQUIRED BY RULE 3:21-4(f), AND THE
SENTENCING COURT DID NOT FIND GOOD
CAUSE TO EXCUSE THAT FAILURE.

POINT VII
THE RESTITUTION ORDER SHOULD BE
VACATED, AND THE MATTER REMANDED TO
THE LAW DIVISION FOR AN INQUIRY INTO
DEFENDANT'S ABILITY TO PAY RESTITUTION.

I.

We do not address defendant's claims on appeal regarding the court's failure to charge the jury as to lesser-included offenses, defendant's attack on the accomplice charge, the court's failure to sua sponte instruct the jury regarding statutory affirmative defenses to felony murder or as to the timing of force, and self-defense as a defense to robbery. The defense theory at trial was that defendant was not present, and that Sweet, not he, was the perpetrator. Given this theory, it was a matter of strategy for counsel to have not requested the lesser-included offenses be charged, not objected to the accomplice charge, and not objected to the absence of any charges with regard to affirmative defenses to felony murder, or on self-defense. If those instructions had been

8

given, it would signal to the jurors that the judge, at least, did not give credence to defendant's theory, and was therefore charging them about alternative scenarios plausible only if defendant was present at the scene of the victim's killing. Therefore, we will not address defendant's first four claims of error at any length. For the sake of completeness, we very briefly discuss them.

None of the issues raised on appeal were raised before the trial judge, thus all are subject to plain error review. See R. 2:10-2. Under that standard, the trial court's decisions will not be disturbed unless defendant shows plain error that is "of such a nature as to have been clearly capable of producing an unjust result," or if it is in the interest of justice to do so. Ibid. Where a defendant fails to object to an instruction in the trial court, Rule 1:7-2 provides that a showing of plain error must be made. "[P]lain error requires demonstration of '[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Burns, 192 N.J. 312, 341 (2007) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)); see also State v. Chapland, 187 N.J. 275, 288-89 (2006).

In order for a court to be obligated to issue a lesser-included charge, there must be a rational basis in the record for such charge to be given. State v. Savage, 172 N.J. 374, 396 (2002). "It is only when the facts 'clearly indicate' appropriateness of that charge that the duty of the trial court arises." State v. Choice, 98 N.J. 295, 299 (1985). In this case, the court's failure to give lesser-included instructions doubtless arose from the fact that it would have run contrary to the defense.

In State v. Perry, 124 N.J. 128 (1991), we affirmed the trial court's failure to charge, sua sponte, self-defense where the unrequested charge was incompatible with the defense strategy. Id. at 162. The defense theory required the jury to make an all-or-nothing decision to acquit or convict. See State v. Doss, 310 N.J. Super. 450, 455-56 (App. Div. 1998). Before the jury could have considered self-defense, the jury would have had to conclude that defendant was present at the victim's death—which defendant argued was not the case.

Similarly, it was not plain error for the court to fail to charge, unrequested, the affirmative defense to felony murder, N.J.S.A. 2C:11-3(a)(3)(a)-(d). An affirmative defense arises under the statute if, and only if, defendant was not the only perpetrator in the underlying crime and he:

(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and

(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and

(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

[Ibid.]

In order for the charge to be given, a defendant must present evidence supporting each element. State v. Smith, 322 N.J. Super. 385, 396-97 (App. Div. 1999). The jury was not presented with any actual testimony that would have caused them to believe that anyone other than defendant was present at the time the victim was killed.

To the contrary, Baith testified that he overheard defendant and Sweet planning to rob the victim, but saw defendant alone leave the home carrying a chain. He further testified that when defendant returned, he asked to speak to Sweet in private, and he overheard defendant telling Sweet that "something went

11

wrong" and that the victim was "hurt bad." Bush also testified that defendant said he met someone who swung at him, and that he had to put him in a choke hold.

Sweet testified that his plan with defendant was only to rob the victim, not kill him. Sweet said he never saw the victim alive at any point. Therefore, the factual premise for the affirmative defense to felony murder does not exist in this case.

It was similarly not plain error for the court to have failed to sua sponte charge the jury on self-defense as a defense to robbery. This argument, independent of the defense theory that defendant had nothing to do with the killing itself, has no basis in the record. It is so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(2).

Nor was it plain error for the court to have omitted charging the jury on the timing of use of force relative to the robbery. Such a charge would be relevant only if there was some basis in the record for the conclusion that defendant stole the victim's marijuana after he was injured. When defendant left Sweet's home, however, it was with the intent to rob the victim of his drugs and car. There is no proof to the contrary. This argument also is so lacking in merit as to not warrant discussion in a written opinion. Ibid.

12

Since we see no error in the charges, there are no cumulative errors which warrant reversal of defendant's conviction. Defendant received a fair trial.

## II.

Defendant also contends the trial court erred when it failed to find mitigating factor two. He claims this mitigating factor "was . . . supported by the evidence adduced at trial, [and] the matter must be remanded for resentencing."

Appellate review of a trial court's sentencing decision is limited. State v. Miller, 205 N.J. 109, 127 (2011). We "assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting State v. Roth, 95 N.J. 334, 364 (1984)). We will "modify sentences when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." Roth, 95 N.J. at 364.

Our Supreme Court has stated:

> [A]ppellate review of a sentencing decision calls for us to determine, first, whether the correct sentencing guidelines, or in this case, presumptions, have been followed; second, whether there is substantial evidence in the record to support the findings of fact upon which the sentencing court based the application of those guidelines; and third, whether in applying those guidelines to the relevant facts the trial court clearly

A-2852-16T4

erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors.

[Id. at 365-66.]

"On review, an appellate court should not substitute its judgment for that of the trial court." State v. Burton, 309 N.J. Super. 280, 290 (App. Div. 1998).

The trial court said:

> The [c]ourt notes as aggravating factors the following: [a]ggravating factor number three, the risk that the defendant would be involved in a reoccurrence of a criminal offense as evidenced by six adult arrests.
>
> The [c]ourt notes aggravating factor number six, a criminal record that includes two municipal court convictions of minimal consequence and three upper court convictions. The two previously referred to by the [c]ourt are robbery and aggravated assault and the present conviction.
>
> And finally, it notes the blatant, obvious aggravating factor number nine, the reason to deter the defendant.
>
> The [c]ourt finds not a single mitigating factor. And the [c]ourt is satisfied that the aggravating factors clearly and substantially outweigh the mitigating factors.

Prior to sentencing, defendant had argued mitigating factor two should apply because the felony murder conviction itself demonstrated that he lacked the intention to cause fatal harm to the victim. N.J.S.A. 2C:44-1(b)(2). He

A-2852-16T4

argued his statement to Sweet after he returned to the home, that "something went wrong," established that he had no intention to fatally harm the victim.

However, the record suggests otherwise. Defendant was seen wearing gloves and wrapping a chain around his hand before meeting the victim. Nothing in the record supports mitigating factor two. The trial court appropriately analyzed and applied the aggravating and mitigating factors, which were supported by the evidence presented at trial.

III.

It is undisputed that Rule 3:21-4(f) provides that notices seeking the imposition of an extended-term sentence "shall be filed with the court and served upon the defendant by the prosecutor within [fourteen] days of . . . return of the verdict." Defendant was put on notice more than one month prior to sentencing that the court was considering the three strikes sentence.

The judge explained at sentencing that he became aware that the mandatory statute was applicable only when he looked at the presentence report and saw defendant's prior conviction history. It was for that reason that he advised everyone, in ample time before the sentence, of the relevance of the extended-term statute, assuming the State provided the appropriate proof of the

prior convictions for second-degree robbery and third-degree aggravated assault.

The statute states that a person shall be sentenced to an extended term of imprisonment pursuant to N.J.S.A. 2C:43-7 if convicted of a violent crime on a third occasion. N.J.S.A. 2C:43-7.1(b). That is precisely what occurred in this case. The judge imposed life imprisonment upon defendant as a third-time offender. Subsection (b) requires an extended term for a person who has been convicted of felony murder, and has previously been convicted of robbery and aggravated assault as enumerated in the relevant statutory sections. The provision is mandatory. Defendant had ample time in which to prepare opposition. Thus, we find no error on the part of the court.

IV.

Finally, the judge imposed a total of $9341 in restitution upon defendant— $4341 to Karen Bauer, the victim's mother, and $5000 to the Victim's Crime Compensation Fund. As to the amount of restitution, the State agrees a hearing is appropriate. Since restitution to the Victim's Crime Compensation Fund is mandatory, no restitution hearing is appropriate as to that. N.J.S.A. 2C:43-3.1(a)(3); N.J.S.A. 2C:46-2(a). With regard to the payment of $4341 to the victim's mother, the court is directed to conduct a restitution hearing.

A-2852-16T4

Affirmed, except that a restitution hearing shall be conducted as to the victim's mother.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2852-16T4