# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3356-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

THOMAS S. MACGREGOR,

      Defendant-Appellant.

_____

Submitted March 31, 2020 – Decided May 14, 2020

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 16-10-1016.

Joseph E. Krakora, Public Defender, attorney for appellant (James K. Smith, Jr., Assistant Deputy Public Defender, of counsel and on the briefs).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Thomas S. MacGregor appeals from his judgment of conviction. We affirm.

On October 4, 2016, a Burlington County grand jury returned Indictment No. 16-10-1016, charging defendant with the following offenses: second-degree attempted sexual assault, pursuant to N.J.S.A. 2C:5-1a(3), 2C:14-2c(4) (count one); second-degree luring a minor, pursuant to N.J.S.A. 2C:13-6 (count two); third-degree attempting to endanger the welfare of a child, pursuant to N.J.S.A. 2C:5-1a(3), 2C:24-4a (count three); third-degree attempting to endanger the welfare of a child, pursuant to N.J.S.A. 2C:5-1a(1), 2C:24-4a (count four); third-degree endangering the welfare of a child, pursuant to N.J.S.A. 2C:24-4b(5)(b) (count five).

In February 2017, a jury found defendant guilty of the first four counts of the indictment.[1] On April 26, 2017, the trial court sentenced defendant to an aggregate six-year term of incarceration, plus parole supervision for life.

Defendant then filed this appeal, raising the following arguments:

POINT I

THE CONVICTIONS OF ALL FOUR COUNTS CHARGING DEFENDANT WITH ATTEMPTS

---

[1] Before trial, the court severed the fifth count, which alleged possession of child pornography. At the request of the State, the trial court dismissed the fifth count at defendant's sentencing hearing.

MUST BE REVERSED BECAUSE THE INCONSISTENT AND PREDOMINANTLY INCORRECT JURY INSTRUCTIONS, TOGETHER WITH THE COURT'S "OUTLINE" OF THE ELEMENTS OF THE CRIMES, ALLOWED DEFENDANT TO BE CONVICTED BASED ON A KNOWING MENTAL STATE.  (Not Raised Below)

A. The Jury Charges

B. Legal Argument

POINT II

THE JUDGE ERRED IN COMBINING THE JURY INSTRUCTIONS ON COUNTS THREE AND FOUR, WHICH CHARGED DIFFERENT FORMS OF ATTEMPT, AND IN FAILING TO INSTRUCT THE JURY THAT AN ATTEMPT UNDER THE "IMPOSSIBILITY" THEORY REQUIRES A COMPLETED CRIME.
(Not Raised Below)

Having considered these arguments in light of the applicable law and facts, we discern no basis to disturb defendant's judgment of conviction.

I

On April 28, 2014, Detective Sara Hyde, an investigator at the Burlington County Prosecutor's Office, posted an ad on the casual encounters section of Craigslist posing as a fourteen-year-old girl named "Jen."  Defendant, a sixty-two-year-old man, responded to the ad using the alias "Harry Mudd."

3

On April 28, 2014, defendant responded to Jen's ad stating, "So, what sort of things do you need Daddy to buy for you? Can I trust you?" Jen replied, "Yea, you can. I'm pretty young though, just so you know. Still in high school, so like I said I need to be able to trust you too. That okay? I want someone to take me shopping though. What's your name daddy?"

Defendant asked for a picture of Jen and eventually asked to talk outside of Craigslist through email. Jen disclosed that she was from Burlington County. Defendant responded he lived relatively close and liked "younger woman, within reason. There is quite an age range that would be considered 'younger.'" He added, "there are certain things explicit in your ad, i.e., a quid pro quo sort of thing which would be problematic if you are too young. . . . Can you share with me, how you envision something like this working out."

After Jen did not answer, defendant sent a second email. Jen revealed she was fourteen-years-old and said it "didn't sound like [you're] into girls my age." Defendant responded it "depends on what you wanted to do." Jen requested clothes and an iPad and asked defendant what he wanted in return. Defendant stated that ads like Jen's carry

> an implication of an exchange of favors of some sort.
> It [is] really not much different than what happens in a
> typical male/female relationship. It [is] just that the
> 'exchange' part is front and center rather than left

4

unsaid. What do you think you have to offer in consideration of 'cloths and stuff' or perhaps even 'an ipad'? I'm very curious to see where your thinking is on this.

Jen asked defendant if he was talking about sex. On May 3, 3014, defendant asked again for a picture of Jen. According to Detective Hyde, she used a picture of herself and sent it to the National Center for Missing and Exploited Children (NCMEC), which used a program to age regress her picture so she looked like a teenage girl. Jen sent the picture to defendant, who responded Jen looked about ten-years-old and "very cute." He asked her where they could meet and Jen responded he could pick her up at a shopping center near her house and bring her back later.

Defendant questioned whether their email exchanges were a scam but later confirmed that he believed Jen was real. He then stated,

it is very rare for me to be attracted to a girl your age. On the rare occasion that does happen, I tend to study her and try to figure out why I'm attracted to her. Kind [of] trying to figure out what makes me tick, why I react to some things the way I do. I'll leave it up to you as to whether you would want to meet.

Jen told defendant she was going away with her dad. Between May 21 and June 12, defendant sent Jen nine unanswered emails. Detective Hyde explained that she stopped answering defendant periodically as an investigative

5

technique to provide defendant an "exit opportunity" to stop communicating with Jen.

On June 12, 2014, defendant sent an email stating he would "be forwarding your info[rmation,] pic[ture], email . . . to CMEC." Detective Hyde interpreted that email as an incorrect reference to the NCMEC. Jen responded to the email asking what CMEC was and asked defendant not to disclose their conversations. Defendant requested another picture of Jen and said he would not report her once they met in person. He eventually sent her a picture of himself and asked if they could still "hookup." Jen agreed but disclosed to him that she would be going to summer camp.

Jen told defendant she was unsure about meeting him. Defendant responded, "Since I am in the habit of meeting the needs of the woman I meet, why don't you tell me what you want to do with me? Sort of a role reversal thing. Would that work for you?" In another email, defendant suggested that he pick up Jen and give her a full body massage at his place. After Jen did not respond, he sent a second email with the subject line, "Young cutie, would you feel better if…" The body of the email stated, "I told you I wanted a blow job, or to fuck you?"

The following day, defendant sent another email discussing the television show "To Catch a Predator," and attached multiple links of police arresting individuals for meeting underage girls. In that email, he acknowledged he fantasized about being with underage girls and "wasn't looking for an underage girl but I apparently found one anyway." He later stated, "The potential consequences scare the hell out of me, but I need to confront this demon/fantasy. Will you help me?"

On August 1, 2014, Jen emailed defendant apologizing for not responding to him and suggested they meet. Defendant sent numerous emails about meeting on August 8, 2014. He also emailed her asking if she wanted a massage and continued to express interest in meeting her. However, when they did not meet on August 8, defendant emailed, "I guess when I do finally meet you. I'll have to pull down your pants and spank your hot little ass for ignoring me. Then we'll see where things go from there."

In total, defendant sent Jen thirteen unanswered emails between August 1 and August 27. Thereafter, defendant and Jen continued to email each other, discussing a time and place to meet in person. Defendant confirmed he bought whipped cream vodka at Jen's request. He and Jen agreed to meet at the Boston Market in Mount Holly on September 9, 2014.

A-3356-17T4

Defendant drove to the Boston Market in his registered vehicle and texted Jen. Meanwhile, Detective Hyde and other officers arrived at the Boston Market and waited for defendant. Police apprehended him after he left Boston Market and transported him to the Burlington County Prosecutor's Office. The following day, a search of defendant's vehicle revealed he had whipped cream flavored vodka in his car, printed directions to the Boston Market from google maps, and condoms.

After receiving his Miranda[2] rights, defendant provided a statement to detectives. He admitted to being attracted to younger woman and described younger woman and girls as his "own demons." Specifically, he admitted to being attracted to girls "anywhere from like [eight] to [fifteen], [seventeen]" and that he watched child pornography. He explained he wanted to meet Jen at the Boston Market to explore his demons and see if he would actually give her a massage. He acknowledged his massage room was always set up and confirmed buying whipped cream flavored vodka for Jen. When asked if he would have touched Jen if she came to his house, he responded, "May have . . . It's one of those things you'll never know because it didn't happen."

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

On July 7, 2016, the trial judge heard argument on defendant's motion to suppress his statement to the police. On July 12, 2016, the judge issued a written opinion denying defendant's motion to suppress; in addition, the judge granted in part, and denied in part, defendant's motion to redact portions of his statement.

On January 31, 2017, the trial judge charged the jury, and also provided jurors with a handout of the elements of the crimes charged and the definition of the words knowingly and purposely. On count one, attempted sexual assault, the judge charged the jury:

> An actor is guilty of attempted sexual assault if he attempts to commit an act of sexual penetration with another person where the victim is at least [thirteen] but less than [sixteen] years old and the actor is at least four years older than the victim.
>
> In order to convict the defendant on this charge, the State must prove beyond a reasonable doubt the following. One, that the defendant attempted to commit an act of sexual penetration with a person he reasonably believed to be at least [thirteen] years old but less than [sixteen] years of age. Two, that the defendant acted knowingly. Three, that . . . at the time of the attempted penetration defendant was at least four years older than the person he believed to be at least [thirteen] years old but less than [sixteen] years old.
>
>     . . . .
>
> The word attempted means to try. . . . [T]hat someone purposely does or admits to do anything or engages in conduct which would constitute a crime if the attendant

9

circumstances were as a reasonable person would believe them to be. It is sometimes explained as a substantial step in a course of conduct which if not interrupted would have resulted in the commission of a crime.

. . . .

We say that a person acts knowingly if he acts with an understanding of what it is that he is doing and with an appreciation of the consequences thereof. The State must prove beyond a reasonable doubt that at the time of the attempted penetration the defendant reasonably believed he was engaging a person who was at least [thirteen] years old but less than [sixteen] years old. If the State failed to prove any element of this offense beyond a reasonable doubt, then you must find the defendant not guilty of attempted sexual assault.

The judge charged the jury on count two. For the mental state he specified a "person acts purposely if he acts with a resolution to do a particular act or to accomplish a certain goal." The judge charged the jury on counts three and four as follows:

The defendant, is charged in counts three and four of endangering the welfare of a child. Count three charges that he attempted to engage in sexual conduct with a person he believed to be a child under the age of [eighteen] which conduct would impair or debauch the morals of a child.

Count four charges that he did engage in sexually explicit conversations with a person he believed to be a minor under the age of [eighteen,] which conduct would impair or debauch the morals of a child.

10

The governing statute provides any person who attempts to engage in sexual conduct which would impair or debauch the morals of a child is guilty of a crime. In order for you to find the defendant guilty of endangering the welfare of a child, the State must prove beyond a reasonable doubt, one, that Detective Sarah Hyde was a person who the defendant reasonably believed to be a child.

Two, that the defendant knowingly engaged in or attempted to engage in sexual conduct with her which would impair or debauch the morals of a child. And again, a child is any person under the age of [eighteen].

During deliberations, the jury sent the judge a note concerning count one, requesting guidance on the definition of attempt, "A[.] [M]ust a substantial step be physical in nature? B[.] [W]hat is meant by a substantial step? C[.] In the context of this statute is intent synonymous with attempt? If not please explain the difference." After a conference with counsel, the judge recharged the jury on attempt; in pertinent part, he explained:

In order to be guilty of an attempt to commit a crime, the defendant must have acted with purpose. In other words, the defendant must have had a purpose to commit the crime of sexual assault in order to be guilty of attempting to commit that crime.

In order to find the defendant guilty, the State must prove two elements beyond a reasonable doubt. First, that the defendant had a purpose to commit the crime of sexual assault. A defendant acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that

11

nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of the circumstances or he believes or hopes they exist.

The jury then submitted another question, asking whether it was "sufficient that [defendant] hoped the penetration would happen." The judge again provided another instruction on "purposely." After further deliberations, the jury returned its guilty verdict.

On April 26, 2017, the trial judge considered and denied defendant's motion for a new trial. The judge then held defendant's sentencing hearing. The judge found aggravating factor three based on defendant's persistence in contacting Jen. He found aggravating factor nine, noting the need to deter defendant and the public in general from committing crimes of this nature. The judge found mitigating factor seven based on defendant's lack of a criminal record.

On counts one and two, the trial judge sentenced defendant on each count to six years of imprisonment, subject to Megan's Law and parole supervision for life. On counts three and four, he sentenced defendant on each count to four years of imprisonment. The judge ordered all sentences to run concurrently.

II

Defendant argues for the first time on appeal that the judge erred in his instructions on all four charges. He contends these are all "attempt" offenses, and the judge failed to correctly instruct the jury that it must find that defendant acted purposely. He argues that the judge failed to consistently and correctly define "purposely" in his instructions.

When a defendant fails to object to a jury charge at trial, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error, in the context of a jury charge, is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

When reviewing any claim of error relating to a jury charge, "[t]he charge must be read as a whole in determining whether there was any error[,]" State v. Torres, 183 N.J. 554, 564 (2005), and the effect of any error must be considered "in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J.

73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). However, a defendant's attorney's failure to object to jury instructions not only "gives rise to a presumption that he did not view [the charge] as prejudicial to his client's case[,]" State v. McGraw, 129 N.J. 68, 80 (1992), but is also "considered a waiver to object to the instruction on appeal." State v. Maloney, 216 N.J. 91, 104 (2013). "[T]he key to finding harmless error in such cases is the isolated nature of the transgression and the fact that a correct definition of the law on the same charge is found elsewhere in the court's instructions." State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997) (quoting State v. Sette, 259 N.J. Super. 156, 192 (App. Div. 1992)).

In Jackmon, the defendant argued that the trial judge incorrectly charged the jury on accomplice liability because the judge did not distinguish the intent required for the grades of the offense. 305 N.J. Super. at 284-85. The defendant also argued the trial judge did not establish that an attempt requires a purposeful mens rea, even if another mental state could establish the underlying crime. Id. at 298. We found reversible error because critical portions of the charge were not just "fleeting reference[s]" and "the entire charge was lengthy and somewhat confusing." Id. at 300.

Conversely, in State v. Smith, we concluded the judge "fully and accurately instructed the jury on the elements of attempt," even though the instruction was given "during an explanation of the law relating to another offense." 322 N.J. Super. 385, 399 (App. Div. 1999). We held, based on the defendant's testimony, the overwhelming evidence that established his guilt, and the "appearance elsewhere in the jury instructions of a proper charge[,] . . . the failure to define attempt in the robbery charge did not prejudice defendant's rights." Id. at 400.

In this case, the trial judge held a charge conference and defense counsel agreed to the proposed charge. The judge provided the jury with a handout detailing the elements of the charged crimes and the definition of purposely that followed the model jury charge. The judge did not define purposely when stating the elements of count one, but immediately thereafter defined the word. Additionally, when the jury asked questions concerning the term attempt, the judge, with the input and consent of defense counsel, recharged the jury similarly to the model jury instructions. Defense counsel did not object to the recharge.

While the trial judge did not define the term purposely every time it was used, like Smith, the judge defined the term purposely multiple times throughout

the charge and throughout the recharge. The instructions on "purposely" were in conformance with the model jury charges, and the record does not support the contention that the jury was confused by the instructions.

Additionally, as in <u>Smith</u>, there was overwhelming evidence that defendant committed the offenses charged. Defendant made a statement to police that was played for the jury. The State provided six months of email exchanges that showed defendant conversing with a person he believed to be a minor, insinuating sexual conduct, and repeatedly trying to meet that person. Police arrested defendant at the location he had arranged to meet the minor. Thus, we find that when viewing the charge as a whole, the mistakes that defendant alleges do not constitute reversible error. <u>Torres</u>, 183 N.J. at 564.

Defendant also argues for the first time on appeal that the trial judge erred by combining the instructions on counts three and four, which both charged defendant with attempting to endanger the welfare of a child. Defendant contends that the charges were based on different theories of "attempt."

The criminal attempt statute, N.J.S.A. 2C:5-1(a), provides in pertinent part:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;

. . . .

(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

The statute creates three separate categories of criminal attempt. State v. Smith, 262 N.J. Super. 487, 503 (App. Div.), certif. denied, 134 N.J. 476 (1993). The first category, subsection a(1), is "where the criminal act is complete but for the attendant circumstances which did not coincide with the actor's reasonable belief"; the third, subsection a(3), is "where the actor has taken a substantial step toward commission of a crime." Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:5-1 (2006).

In State v. Kornberger, the trial judge provided instructions as to all three subsections of the criminal attempt statute, even though only the "substantial step" type of attempt, subsection a(3), applied to the facts of the case. 419 N.J. Super. 295, 302 (App. Div. 2011). We concluded that although a "charging error" was committed, it did not require reversal given the strength of the State's

case, the balance of the judge's charge, and the contentions of the parties. Id. at 303-04. We explained:

> Taken in context, there is no realistic likelihood that the jury would have focused on the clearly inapplicable theor[y] of impossibility. . . . We will not speculate that "for unknown reasons" the jury might have convicted defendant on . . . a(1) . . . when they "would have acquitted him" under a(3). Cf. [State v. Condon, 391 N.J. Super. 609 (App. Div. 2007)]. Given the overwhelming evidence in this record, there is no change that any jury "would have acquitted" this defendant under a(3).
>
> [Id. at 304.]

Defendant relies on Condon where the defendant was charged with attempted sexual assault. 391 N.J. Super. at 611. The judge permitted the jury to convict defendant under subsection a(1) or a(3) of the attempt statute. The jury found defendant guilty without specifying under which theory of liability it had reached its verdict. Id. at 617. Based on the fact that defendant could not have completed the sexual assault, we found that the defendant could only be convicted under subsection a(3), while the judge instructed the jury on both subsection a(1) and a(3). We reversed because it was unclear whether the jury could have applied the right subsection for conviction. Id. at 617-18.

In counts three and four, defendant was charged with attempted endangering the welfare of a child. Count three charged defendant under

18

subsection a(3) of the attempt statute, while count four charged defendant under subsection a(1) of the attempt statue.

Under count three, the State alleged that defendant attempted to engage in sexual conduct by participating in sexually explicit conversations that would impair or debauch the morals of a child. Defendant contends the judge relied entirely on a subsection a(3) of the attempt statute. If there is no completed sexual act, the defendant should only be charged under subsection a(3). Here, there was no completed sexual act for count three. Therefore, the subsection a(3) was appropriately charged.

Defendant's reliance on Condon is misplaced because in Condon a jury returned a verdict without specifying which attempt subsection applied to the sexual assault charge. Here, there are two separate counts, each applying separate attempt subsections to the charge of endangering the welfare of a child. The jury returned a verdict specifying which subsection of the attempt statute applied. Thus, the error that warranted reversal in Condon does not apply here.

Regarding, count four, subsection a(1) applies when the criminal act is complete, but the attendant circumstances are not as a reasonable person would believe them to be. Defendant could not be convicted, however, unless the State established that a reasonable person would believe the fictitious person with

whom defendant was communicating was actually a minor. There was no completed act, just an attempt. Thus, subsection a(3) applied to that charge. While there may have been a charging error, we find this case similar to <u>Kornberger</u>, where there was overwhelming evidence of the defendant's guilt. Thus, when viewing the charge as a whole, the mistakes that defendant alleges do not amount to reversible error. <u>Torres</u>, 183 N.J. at 564.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION